HELEN S. COOPER, administratrix with the will annexed,
*vs.* WILLIAM I. MONROE & others.

Suffolk. November 18, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Trust,* What constitutes. *Equity Jurisdiction,* To establish trust, condition or life
estate. *Deed,* Acknowledgment. *Equity Pleading and Practice,* Master.

A bill in equity, based upon alleged rights of the plaintiff arising out of a "trust"
or "condition" or "life estate" under which real estate of the plaintiff's great-
grandfather was given by him to his children and upon the death of the sur-
vivor of them would be received by the plaintiff as his only heir at law then
living, cannot be maintained where a master, to whom the suit was referred, in
a report which did not include a report of the evidence, finds that "the plaintiff
claimed that a writing alleged to be a will of" his great-grandfather, "which
was never probated, should be admitted in evidence as proof of the 'condition
or 'trust' or 'life estate' in which he asserted the children of" the great-grand-
father "took his real estate. This paper was marked for identification, and was
excluded by the master;" and further finds that the great-grandfather died
intestate and that "no condition of any kind was imposed upon the real estate
. . . and the plaintiff . . . took no property as the heir of" his great-grand-
father.

The circumstance that a deed was acknowledged before the grantee does not
render the conveyance void.

BILL IN EQUITY, filed in the Supreme Judicial Court on February
8, 1917, by Frederick F. Read of Fishkill in the State of New
York and, upon his death, further prosecuted by Emma S. Read,
the executrix of his will, and, upon her death, by Helen S. Cooper,
the administratrix with the will annexed of the estate not already
administered.

The suit was referred three times to masters, and finally to
Frederic H. Chase, Esquire, who, alone, filed a report. The bill
occupies forty-five pages of the printed record. The master states
in his report that it "is believed that" the following "brief sum-
mary contains the substance of the main grounds upon which
relief is sought." The summary was as follows:

"William Marshall, the great-grandfather of the plaintiff, died
in 1860. Upon his death his real estate went to his four children,
whether by descent or devise the plaintiff does not state. The

four children took the realty, however, so the bill claims, upon 'condition' or 'trust' that no part of it should be sold during the. lifetime of any of the children, and upon the death of the survivor of them the property was to go to the heirs of said William Marshall then living. Precisely how this 'condition' was imposed, and the life estate of the four children was created, the bill does not explain.

"Notwithstanding the 'condition' or 'trust,' however, it is alleged the four children from time to time during their lives conveyed away portions of the lands, and with the proceeds purchased other real estate, which in turn became impressed with the same 'condition' or 'trust.'

"It seems to be assumed throughout the bill, although it is not so stated expressly, that the title of record in the four children was clear, and that the 'trust' or 'condition' or 'life estate' which limited their tenure did not prevent them from conveying the fee to grantees for value and without notice.

"As each one of the children of William Marshall died, his interest in the real estate, limited as above described, passed to the surviving children. The last of them, Josiah P. C. Marshall, died in 1915, and upon his death, it is alleged, the fee in all the realty which had originally come to the four children in 1860 from William Marshall, or which had been bought with proceeds of the sale thereof, came, under the terms of this 'condition' or 'trust,' to the plaintiff, Frederick F. Read, the great-grandson of William Marshall, and his only surviving heir.

"This is the substance and foundation of the plaintiff's main claim as it runs through the whole length of the bill.

"It is to establish this 'condition' or 'trust' or 'life estate,' as it is variously described, and the plaintiff's title to the remainder and the fee of the lands affected by it, or the proceeds from the sale of such lands, or other land bought with such proceeds, that the bill is brought.

"The plaintiff's claim is elaborated and applied to the different defendants somewhat as follows:

"When Josiah P. C. Marshall, the survivor of the four children of William Marshall, died, in 1915, he left a widow, Elizabeth T. Marshall, who died in 1916. The bill sets forth that she knew of the 'condition' under which her husband held the real estate standing of record in his name, and knew that upon his death it

would go, in accordance with such 'condition' or 'trust,' to the plaintiff. With this in mind, it is stated, and in order to deprive and defraud the plaintiff of his rights therein, she and the defendant Monroe, who was her lawyer, procured Josiah P. C. Marshall to sell a large part of this real estate, and to 'convert' the same into money, which came to her either by gift from him during his lifetime, or under his will after his death. This money, the plaintiff claims, belongs to him.

"Other parcels of land Josiah P. C. Marshall conveyed, through said Monroe, to his wife, in fraud of the plaintiff's rights, and these parcels, or the proceeds of such of them as have since been sold by Mrs. Marshall, are the property of the plaintiff, he claims.

"A separate charge is made with reference to the property of Susan G. Coolidge, one of the children of William Marshall, surviving him when he died in 1860.

"Mrs. Coolidge, so it is alleged, died in 1895, leaving real estate of great value, which had been bought with proceeds of real estate of William Marshall, which was subject to said 'condition' or 'trust,' and which therefore, upon her death, passed to her brother, Josiah P. C. Marshall, for life, and, at his decease, to the plaintiff in fee. She left a will giving the bulk of this property to charities. The will was contested by her brother, Josiah P. C. Marshall, who, by persuasion of his wife and the defendant Monroe, was induced to withdraw his objections to the allowance of the will, and to accept in consideration therefor $30,000 in money, of which sum his wife secured possession. Thereupon the will of Susan G. Coolidge was allowed, her estate was distributed in accordance therewith, and the plaintiff was thereby defrauded of his interest in said real estate.

"Another independent claim is made in the bill, based upon the following grounds:

"Josiah P. C. Marshall left a will in which he gave his wife, Elizabeth T. Marshall, a life interest in his real estate, with remainder to the plaintiff in fee. Before he made this will he purported to convey two parcels of land, by mesne conveyance, through the defendant Monroe, to his wife. The first of these conveyances was made in 1891, and was invalid, it is claimed, because the deed was never delivered by the grantor. The second conveyance was made in 1896, and is alleged to have been of no

effect because the deed to the defendant Monroe, through whom title passed to Mrs. Marshall, was acknowledged before the grantee. A third parcel was sold by Josiah P. C. Marshall a few days before his death in 1915, when it is stated he was of unsound mind.

"All of these conveyances were made, it is claimed, through the fraud and undue influence of Mrs. Marshall and her lawyer, the defendant Monroe.

"These pieces of property, the bill asserts, because of the invalidity of the conveyances, came to the plaintiff as remainder-man under the will of Josiah P. C. Marshall after the death of his wife, who had a life estate.

"There is also an allegation in the bill that after the death of Josiah P. C. Marshall, his widow, by fraud, induced the plaintiff to convey to her his reversion in the property 7 and 9 Elm Street, Boston, in exchange for a conveyance to him by Mrs. Marshall of her life interest in all other real estate left by Josiah P. C. Marshall, and $20,000 in money.

"Elizabeth T. Marshall, the widow of Josiah P. C. Marshall, died in 1916 possessed of real and personal estate of great value, nearly all of which, it is stated, came to her through her husband, and was the proceeds, or was bought with the proceeds, of the real estate of William Marshall, which was subject to the 'condition' or 'trust' above described, and hence was the property of the plaintiff. She left a will naming the defendant Monroe as her executor, and making all the other defendants named in the bill beneficiaries."

An interlocutory decree overruling exceptions by the plaintiff to the master's report was entered after a hearing by *De Courcy,* J., who also denied a motion to recommit the suit to the master for a report of evidence, and by his order a final decree was entered confirming the master's report and dismissing the bill. The plaintiff appealed only from the final decree.

*F. Hendrick* (of New York), (*H. H. Ballard, Jr.,* with him,) for the plaintiff.

*H. D. McLellan,* for the defendants.

CROSBY, J. This is an appeal from a final decree confirming a master's report and dismissing the bill. The bill was brought by Frederick F. Read who has since deceased, thereafter his execu-

trix was substituted as plaintiff and upon her death the adminis-
tratrix of his estate with the will annexed was admitted as a
party plaintiff.

The master's report recites that he met the parties, "heard
their evidence, examined their papers, documents, and vouchers,
and now make[s] report of . . . [his] findings to the court."
He further states in the report: "The case was referred to me after
it had been fully heard by a former master. Pursuant to the
directions of the court I have considered 'the evidence introduced
before that master in making my report, a complete transcript of
the testimony and all the exhibits having been furnished to me."

Frederick F. Read, the original plaintiff, (who will hereafter be
referred to as the plaintiff) was the grandson of Josiah P. C.
Marshall and his first wife. The master found that William
Marshall, the great-grandfather of the plaintiff, died intestate
in the year 1860, leaving a widow, Susan Marshall; and as his
only heirs at law his four children, — William F., John W. S.,
Josiah P. C., and Susan G.; that Susan Marshall, the widow,
died in 1869; that William F. Marshall died in 1888, and John
W. S. Marshall died in 1893; that both were unmarried and with-
out issue; that Susan G. Marshall married Austin J. Coolidge
whom she survived, and died without issue in 1895; that Josiah
P. C. Marshall, by his first wife, had a daughter, Catherine Cooke
Marshall, who was living at the time of the death of William
Marshall in 1860; that she married William Read, and her son,
the plaintiff, was born in 1873; she died in 1877. Josiah P. C.
Marshall, after the death of his first wife, married Elizabeth
Taylor. He died in 1915; his wife died in 1916 leaving no issue;
the plaintiff died in 1917.

The bill in substance alleges, and the plaintiff contends, that
the four children of William Marshall each took from him the
real estate of which he died seised upon a "condition" or "trust"
that no part of it should be alienated during the lifetime of any
of the children and upon the death of the survivor of them it was
to be vested in the heirs of William Marshall then living. It is
also the contention of the plaintiff that, under the terms of the
condition or trust, upon the decease of Josiah P. C. Marshall, the
last surviving child, he became entitled to the remainder and the
fee in all the realty of William Marshall which had originally

vested in the four children in 1860 or the proceeds from the sale of such real estate, or other land bought with such proceeds. The bill seeks to establish a trust in the various parcels of real estate therein described and the plaintiff's title to the fee in the remainder thereof.

We do not deem it necessary to refer in detail to the many allegations of the bill or to the various parcels of real estate therein described, as the allegation that all the real estate left by William Marshall was subject to a "condition" or "trust" lies at the foundation of the plaintiff's claim.

It does not clearly appear from the bill in what manner the alleged condition or trust was created, none is alleged to have been established by William Marshall by any instrument, unless it is to be inferred that it was created by will. But the master found that William Marshall died intestate. He states that: "At the hearing the plaintiff claimed that a writing alleged to be a will of William Marshall, which was never probated, should be admitted in evidence as proof of the 'condition' or 'trust' or 'life estate' in which he asserted the children of William Marshall took his real estate. This paper was marked for identification, and was excluded by the master."

The finding that the alleged will was never probated makes it clear that the plaintiff could obtain no rights thereunder, and it was properly excluded. The plaintiff in his brief, however, contends that he offered at the hearing before the first master, the record of the probate of the will and that it was excluded subject to the plaintiff's exception; a careful examination of the voluminous record fails to show that such evidence was offered; neither the alleged will nor the record of its probate, if there is such a record, is before us.

It follows, as the evidence is not before us, that the finding that William Marshall died intestate, and the further finding that "no condition of any kind was imposed upon the real estate acquired from said William Marshall by his children in 1860, but that upon his death they took the same by descent in fee, and the plaintiff, upon the decease of Josiah P. C. Marshall in 1915, took no property as the heir of William Marshall" is conclusive, and as the plaintiff has failed to prove the condition or trust as alleged, he cannot prevail.

Josiah P. C. Marshall left a will in which he gave his wife, Elizabeth T. Marshall, a life interest in his real estate with remainder to the plaintiff in fee to which the plaintiff became entitled. Before this will was made, the testator conveyed two parcels of land by mesne conveyance through the defendant Monroe to his wife. The first of these conveyances was made in 1891 and is claimed by the plaintiff to be invalid because the deed to Monroe was never delivered by the grantor. The second was made in 1896 and is alleged to have been invalid because the deed to the defendant Monroe, through whom the title passed to Mrs. Marshall, was acknowledged before the grantee. A third parcel was sold by the testator a few days before his death in 1915; the plaintiff contends that this conveyance was invalid on the ground that, when it was executed, the grantor was of unsound mind. The master found that the two deeds executed in 1891 were delivered and recorded on November 6, 1891; that by a mistake the certificate of the justice of the peace before whom the first deed was acknowledged was dated October 6, 1891, although he finds that the deed was in fact acknowledged by the grantor on November 6, 1891; that of the deeds given in 1896, the one from the testator to Monroe was acknowledged before the latter, who on the same day made a certificate of acknowledgment as justice of the peace; and that both deeds were recorded in the registry of deeds. The circumstance that the acknowledgment of the deed to Monroe was made before him did not render the conveyance void. It is well settled that a deed duly signed, sealed and delivered is sufficient as between the original parties to it to transfer the whole title of the grantor to the grantee, although the instrument is not acknowledged nor recorded. *Palmer* v. *Paine,* 9 Gray, 56. *Dole* v. *Thurlow,* 12 Met. 157. *Earle* v. *Fiske,* 103 Mass. 491. *Toupin* v. *Peabody,* 162 Mass. 473. *Hayden* v. *Peirce,* 165 Mass. 359. As to the parcel of land sold by Josiah P. C. Marshall in 1915, a few days before his death, the master found that when the deed was executed the grantor was of sound mind.

The above findings dispose of the plaintiff's contentions that the deeds are invalid. The many allegations of the bill and the master's findings with reference thereto, have become immaterial by reason of the finding that no condition or trust in favor of the

plaintiff was shown to have been established. It, therefore, is unnecessary further to consider them.

No appeal was taken to the interlocutory decree overruling the plaintiff's exceptions to the master's report or to the interlocutory decree denying the motion to recommit the report. The case is before us only on an appeal from the final decree confirming the report and dismissing the bill, and, as no error of law appears, the entry must be

*Decree affirmed.*